## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| THE PEOPLE OF GUAM,<br><br>vs.<br><br>ARTHUR U. SAN AGUSTIN, *et al*,<br><br><div align="center">Defendant.</div> | Case No. CF0446-23<br><br>**DECISION AND ORDER**<br>**(Motions to Disqualify)** |

## INTRODUCTION

This matter came before the Honorable John C. Terlaje on several dates from March 12 – 13, 15, and 18, 2024 and April 8, 2024, for an evidentiary hearing on Arthur San Augustin's ("Defendant San Augustin's") Motion to Disqualify the Office of the Attorney General (Sept. 1, 2023) and Masatomo Nadeau's ("Defendant Nadeau's") Motion to Disqualify the Office of the Attorney General and Joinder in San Augustin's Motion (Sept. 1, 2023). Deputy Attorney General Michael Tennyson ("Tennyson") and Assistant Attorney General Lewis Harley ("Harley") appeared on behalf of the People, while Attorney General Douglas Moylan ("Moylan") was disqualified from representing the People given his dual role as an advocate and witness.[1] Joaquin Arriola ("J. Arriola") and William B. Brennan ("Brennan") appeared for Defendant San Agustin and G. Patrick Civille ("Civille") appeared for Defendant Nadeau. Based on the relevant law and authorities the Court now issues the following decision and order **GRANTING** Defendants' Motions to Disqualify the Office of the Attorney General.

---

[1] *See* Dec. & Order, CF0446-23 (Mar. 29, 2024) (disqualifying Moylan under CRPC 3.7).

## BACKGROUND

On August 21, 2023, the Office of the Attorney General indicted Defendant San Augustin and Defendant Nadeau with five charges: (1) Tampering with Public Records, (2) Obstructing Government Functions, (3) Official Misconduct, (4) Obstructing Governmental Functions, and (5) Official Misconduct. Super. Indictment (Aug. 21, 2023). These charges were all brought regarding both Defendants roles in the Department of Public Health and Social Services ("DPHSS"). It is alleged that Defendant San Agustin, formally the Director of Guam DPHSS, renewed sanitary permits for several public schools without proper inspection; it is further alleged that Defendant Nadeau, as the Chief Environmental Public Health Officer of the Guam DPHSS, Division of Environmental Health, aided in this misconduct at the expense of public health. [Prop.] Findings of Facts & Conclusions of Law re: Mot. to Disqualify Off. of Att'y Gen. (Apr. 1, 2024).

On September 1, 2023, Defendant San Augustin filed a Motion to Disqualify the Office of the Attorney General. Mot. to Disqualify Off. Of Att'y Gen. (Sept. 1, 2023). On the same day, Defendant Nadeau also filed a Motion to Disqualify the Office of the Attorney General and Joinder in San Augustin's Motion. Def. Nadeau's Mot. to Disqualify Off. Of Att'y Gen. and Joinder in San Augustin's Mot. to Disqualify Off. of Att'y Gen. (Sept. 1, 2023). Defendants argue that the OAG has a disqualifying conflict of interest in this case because the criminal division of the OAG was prosecuting the Defendants while the civil division of the OAG was simultaneously advising them as clients.

On September 15, 2023, the People of Guam (the prosecutorial division of the OAG) filed an Opposition to Defendant San Augustin's Motion. People's Opp'n to Mot. to Disqualify Off. of Att'y Gen. (Sept. 15, 2023). On the same day, the People also filed an Opposition to

Defendant Nadeau's Motion. People's Opp'n to Def. Nadeau's Mot. to Disqualify Off. of Att'y Gen. (Sept. 15, 2023). Both Oppositions argue that disqualification is a drastic course of action and that the OAG's criminal division did not co-mingle with the civil division to an unethical extent. On September 22, 2023, Defendant San Augustin filed his Reply. Reply to People's Opp'n Re Mot. to Disqualify Off. of Att'y Gen. (Sept. 22, 2023). In addition, on the same day, Defendant Nadeau filed a Reply. Def. Nadeau's Reply in Supp. of Mot. to Disqualify Off. of Att'y Gen. (Sept. 22, 2023). In their Replies, Defendants reasserted their allegations of prosecutorial misconduct and requested an evidentiary hearing.

This case first came before this Court on January 16, 2024.[2] After a stipulation by the parties, the Motion to Disqualify was set to be heard on January 22, 2024. On January 19, 2024, however, the People filed a Motion for Protective Order to prevent the testimony of Attorney General ("AG") Moylan; Chief Deputy AG ("CDAG") Joseph Arthur Guthrie; Acting Chief Prosecutor Gloria Ann L. Rudolph; Deputy AG Frank Gumataotao; Investigator Maria Apuron; and former Assistant AG Sandra Miller, arguing that an evidentiary hearing would be improper and violate attorney client privilege. Mot. for Protective Order (Jan. 19, 2024). At the hearing on January 22, 2024, the parties argued the motion wherein the People pointed out that Attorney General Moylan had not been properly subpoenaed. Min. Entry at 9:15:21 AM (Hearing, Jan. 22, 2024). On January 29, 2024, Defendants filed their Oppositions. Def. Nadeau's Opp'n to People's Mot. for Protective Order (Jan. 29, 2024) and Def. Arthur U. San Agustin's Opp'n to People's Mot. for Protective Order (Jan 29, 2024). On February 2, 2024, the People filed their Reply. Reply to Opp'ns to Ex Parte Appl. for Protective Order (Feb. 2, 2024).

---

[2] The case was originally before the Honorable Alberto C. Lamorena III, who was disqualified due to his relationship with Governor Lourdes A. Leon Guerrero. Dec. & Order Granting Def.'s Renewed Statement of Obj. (Jan. 3, 2024). This case was thereafter reassigned to this Court. Notice of Judge Assignment (JCT) (Jan. 16, 2024).

With the Motion for Protective Order still pending, the People filed a new, different Motion to Strike Defendant's Submission of an Audio CD for violating Court Orders. Mem. Supp. Ex Parte Mot. to Seal & to Strike Def.'s Submission (Jan. 31, 2024). In addition, the People filed a Motion to Seal the impending evidentiary hearing given the potential violations of attorney-client privilege that might surface during testimony. Mot. to Seal Hr'g (Feb. 2, 2024). On February 5, 2024, Defendant San Augustin filed an Opposition. Def. Arthur U. San Agustin's Opp's to People's Mot. to Seal Hr'g' (Feb. 5, 2024). On the same day, Defendant Nadeau filed a Joinder in San Augustin's Opposition. Def. Nadeau's Joiner in Def. Arthur U. San Agustin's Opp's to People's Mot. to Seal Hr'g' (Feb. 5, 2024). The People did not file a Reply. At a hearing on February 6th, 2024, the Court Denied the earlier Motion for Protective Order and took the new Motions to Strike and Seal under advisement. Min. Entry at 11:22:53 AM (Hearing, Feb. 6, 2024) and Dec. & Order Denying People's Mot. for Protective Order (Feb. 14, 2024). On February 14, 2024, the Court released a decision granting the People's Motions to Seal and Strike, while also finding that AG Moylan was not properly subpoenaed. Dec. & Order Granting People's Mot. to Seal and Strike (Feb. 14, 2024).

Perhaps in anticipation of this Court's evidentiary hearing, on February 28, 2024, AG Moylan sent notices to twenty-two executive branch agencies of the Government of Guam, notifying them that Moylan was "temporarily withdrawing" from representing the agencies in a civil capacity due to a potential conflict of interest between his civil role and his role as Public Prosecutor. *See* Decl. J., CRQ24-001 at 2 (May 31, 2024). Following the notices, the Speaker of the 37th Guam Legislature called an emergency session, and the Governor called for two special sessions to address the issues that arose from the AG's withdrawals. *Id.* at 3. On March 7, 2024, Defendants properly subpoenaed AG Moylan. Subpoena. (Mar. 7, 2024).

With Guam's agencies awaiting clarity regarding their potential conflict with the AG, on March 12, 2024, the sealed evidentiary hearing began, and this Court heard testimony from AG Moylan and Former AAG Jessica Toft. Before the testimony of AG Moylan, Attorney Arriola argued that Moylan should be disqualified from representing the OAG, given his dual role as an advocate and witness under CRPC 3.7. The Court took it under consideration. Min. Entry at 9:35:14 AM (Hearing, Mar. 12, 2024). Later, during the testimony of AAG Jessica Toft, before the People began their cross examination, Attorney Arriola again argued that AG Moylan should not be allowed to cross-examine Toft under CRPC 3.7. The Court agreed, granting the motion to disqualify Moylan as counsel. *Id.* at 3:13:14 PM. At the end of the day, the additional attorneys for the People, DAG Tennyson and AAG Harley, requested that Moylan be allowed to speak during the trial. The Court reiterated that AG Moylan could not question witnesses under CRPC 3.7, but Tennyson and Harley were free to quietly seek advice from Moylan during trial. *Id.* at 3:29:35 PM.

The hearing continued the next morning on March 13, 2024, and the Court heard continued testimony from Former AAG Jessica Toft and testimony from Former AAG Sandra Miller. At the start of the hearing, Attorney Arriola moved to unseal the proceedings and the Court denied the Motion. Min. Entry at 9:25:15 AM (Hearing, Mar. 13, 2024). Further, the People moved to reconsider the disqualification of AG Moylan as council, but the Court declined and reiterated that only DAG Tennyson and AAG Harley would be allowed to question witnesses during the hearing. *Id.* Later in the day, before lunch, AG Moylan argued that his disqualification handicapped the People and DAG Tennyson and AAG Harley were not prepared to advocate on the People's behalf. The Court stood by its earlier decision and told AG Moylan that he would have time to find new representation if necessary. *Id.* at 12:09:05 PM. After lunch, the

examination of Former AAG Toft ended. *Id.* at 1:50:58 PM. At this point, the examination of Former AAG Sandra Miller began, and continued until the end of the day. *Id.* at 1:55:34 PM and 4:32:11 PM.

On March 14, 2024, the Governor filed a petition with the Guam Supreme Court, requesting a declaratory judgment on several questions related to the AG's withdrawals, including whether the OAG has an attorney client relationship with the executive branch agencies subject to the Guam Rules of Professional Conduct.

On March 15, 2024, the People filed an Ex Parte Motion for Reconsideration of the Oral Motion to Disqualify AG Moylan from Representing the People at the Evidentiary Hearing. Ex Parte Mot. for Recons. of Oral Mot. to Disqualify Att'y Gen. from Representing the People at Evidentiary Hr'g (Mar. 15, 2024). The very same morning, the third day of hearings began, and the Court denied the Ex-Parte Motion. Min. Entry at 10:08:52 AM (Hearing, Mar. 15, 2024). AG Moylan then inquired whether the Court's decision would also prevent him from giving a closing argument, to which the Court responded that they had not yet decided. *Id.* at 10:09:41 AM. Finally, Attorney Anita Arriola ("A. Arriola") appeared and argued that it would be unethical for AG Moylan to give a closing argument. *Id.* at 10:09:50 AM. Attorney J. Arriola also made a standing motion to unseal the case. *Id.* at 10:16:54 AM. After this housekeeping, CDAG Joseph Arthur Guthrie began his testimony. *Id.* at 10:17:24 AM. During testimony, CDAG Guthrie entered into discovery surprise evidence that the OAG established a conflict wall with regards to the case. Attorney J. Arriola asked for a recess to make a copy and review. *Id.* at 10:27:39 AM. This testimony continued until lunch and, upon returning from lunch, the Court sent the parties home for the day, requesting that the Defendants brief their concerns against AG Moylan presenting at closing. *Id.* at 1:41:24 PM.

The fourth day of hearings took place on March 18, 2024. Again, Attorney J. Arriola made a standing Motion to Unseal the proceedings, and again, the Court denied it. Min. Entry at 10:07:00 AM (Hearing, Mar. 18, 2024). The Court heard continued testimony from CDAG Guthrie, as well as testimony from Investigator Maria Apuron and Acting Chief Prosecutor Gloria Ann L. Rudolph. *Id.* at 10:07:05 AM, 11:38:28 AM, and 2:39:05 PM. At the end of the day, regarding the disqualification of AG Moylan from closing arguments, the Court requested that Defendants file Oppositions and the People file a Reply. *Id.* at 3:44:04 PM. On March 20, 2024, the Defendants filed their Oppositions.[3] On March 22, 2024, the People filed their Reply.[4] Finally, on March 29, 2024, the Court filed, under seal, a decision and order denying the People's Motion for Reconsideration of AG Moylan's disqualification from the proceedings[5], and extended the disqualification to closing arguments. Dec. & Order Denying Mot. to Recons. (Mar. 29, 2024).

On the same day, the People filed a Proposed Findings of Fact and Conclusions of Law ("FFCL") regarding the disqualification of the entire OAG, ahead of closing arguments. [People of Guam's Prop.] Findings of Fact & Conclusions of Law re: Mot. to Disqualify the AG (Mar. 29, 2024). On April 1, 2024, Defendant San Agustin filed his Proposed FFCL. [Prop.] Findings of Facts & Conclusions of Law re: Mot. to Disqualify Off. of Att'y Gen. (Apr. 1, 2024). On the same day, Defendant Nadeau also filed a Proposed FFCL. Def. Nadeau's Prop. Findings of Fact & Conclusions of Law (Apr. 1, 2024). The fifth and final day of hearings took place on April 8,

---

[3] Def. Arthur U. San Agustin's Opp'n to People's Ex Parte Mot. to Recons. Disqualification of AG Moylan & Witness Moylan from Arguing Evidentiary Hr'g (Mar. 20, 2024) and Def. Nadeau's Joinder in Def. San Agustin's Opp'n to People's Ex Parte Mot. to Recons. Disqualification of AG Moylan & Witness Moylan from Arguing at Evidentiary Hr'g (Mar. 20, 2024).
[4] Reply to Opp'ns to Ex Parte Mot. for Recons. (Mar. 22, 2024).
[5] Under GRPC 3.7.

2024, during which the Court heard closing arguments.[6] At the end of the day, the Court concluded that the hearings failed to surface any evidence that violated attorney client privilege and unsealed the proceedings[7]. Min. Entry at 12:20:53 PM (Hearing, Apr. 8, 2024). The Court then took the matter under advisement. *Id.* at 12:22:14 PM.

After the hearing, on May 31st, 2024, the Guam Supreme Court entered a declaratory judgment answering the Governor's questions regarding the AG and his relationship to the executive branch agencies. Decl. J., CRQ24-001 (May 31, 2024). The Guam Supreme Court found that the OAG does indeed have an attorney-client relationship with the agencies, and the Guam Rules of Professional Conduct apply. *Id.*

## FINDINGS OF FACT

By preponderance of the evidence, the Court makes the following findings of fact:

### Case Background

1. There is, within the Executive Branch of the government of Guam, a Department of Public Health and Social Services ("DPHSS"), the head of which is the Director. 5 GCA § 3111.

2. The Division of Environmental Health exists within the DPHSS and carries out planning and measures to detect and track public health emergencies. 10 GCA § 20103. Environmental Health Division Personnel have the authority to act in the name of the Director of the DPHSS. 10 GCA § 20104.

3. It is unlawful for any person to operate or open for business any institutional facility as defined in 10 GCA § 25101 (which includes schools for the care and education of

---

[6] AAG Harley presented closing arguments for the People in place of AG Moylan. Min. Entry. at 11:40:10 AM.
[7] The Court later filed an Order formally unsealing the hearing. Order Unsealing Evidentiary Hr'g (Apr. 19, 2024).

students from kindergarten through grade twelve) "without a valid sanitary permit for such establishment or activity, issued by the Director." 10 GCA § 21101.

4. "As often as may be deemed necessary and, at least once every three (3) months, the Director shall inspect every establishment or activity subject [to the Chapter above]. The date of each inspection shall be noted on the permit." 10 GCA § 21104.

**Structure of the Office of Attorney General**

5. "The Attorney General shall have *cognizance of all matters pertaining to public prosecution*, including the prosecution of any public officials." 5 GCA § 30104 (emphasis added).

6. The Office of the Attorney General conducts criminal prosecutions and brings criminal cases in the name of the People of Guam.

7. "Notwithstanding any other provision of law, the Attorney General shall have *cognizance of all legal matters*, excluding the Legislative and Judicial Branches of the government of Guam, *involving the Executive Branch of the government of Guam*, its agencies, instrumentalities, public corporations, autonomous agencies and the Mayors Council[.]" 5 GCA § 30102 (emphasis added).

8. The Office of the Attorney General gives legal advice to government agencies through its "Civil Litigation" division, and formerly through its "Solicitor" division, which has now been merged with the Civil Litigation division. Min. Entry at 10:36:01 AM (Hearing, Mar. 12, 2024).

## The OAG's Representation of DPHSS

9. In 2019, Former AAG Jessica Toft assisted DPHSS in drafting updated rules and regulations of the issuance of school sanitary permits, including § 4719 which provides a 5-year grace period for existing schools to be in compliance with the rules. Min. Entry at 2:43:21 AM (Hearing, Mar. 12, 2024).

10. On January 27, 2020, Defendant, and then DPHSS Director, Arthur U. San Agustin asked the OAG to provide guidance on DPHSS's authority to enforce school sanitary permit regulations given the five-year grace period in § 4719. Nadeau Decl. at 20-37 and *Def.'s Ex. L.*

11. In response to a request for legal services from DPHSS, on August 10, 2022, then AAG Sandra Miller issued an "Information and Guidance" memorandum to the then Acting Director for DPHSS Camacho regarding the Implementation of the Rules and Regulations for School Building Sanitation. *Def.'s Ex. K.*

## Investigation by the Government Corruption Division

12. In January 2023, after taking office as Attorney General of Guam, AG Moylan opened an investigation into the sanitary permits of several Guam schools. Later, AG Moylan personally participated in the investigation of DPHSS. Min. Entry at 10:30:00 AM (Hearing, Mar. 12, 2024) and Min. Entry at 2:39:00 PM (Hearing, Mar. 13, 2024).

13. On February 9, 2023, upon the request of then Acting Chief Prosecutor Heather M. Zona, a Grand Jury issued its first Subpoena Duces Tecum in Investigative Case AG23-246 to the Custodian of Records for DPHSS. *Def.'s Ex. P.*

14. On February 13, 2023, DPHSS Director San Agustin sent a letter to AG Moylan, claiming a conflict of interest since DPHSS was allegedly the AG's client, and sought

assistance with the subpoena. There was no response, so DPHSS returned documents in response to the February 2023 subpoena without any assistance from the OAG. In February 2023, AAG Jessica Toft also left the OAG. *Def.'s Exs. R1 and BB.*

15. On April 6, 2023, San Augustin sent a formal request for legal services concerning the effective date of a sanitary permit. Before May 2023, AG Moylan received updates from DAG Zona regarding the investigation into school sanitary permits and then from DAG Rudolph before the case was publicly filed in July 2023. *Def.'s Ex. C* and Min. Entry at 11:11:00 AM (Hearing, Mar. 12, 2024).

## Conflict Wall

16. On April 17, 2023, CDAG Guthrie issued a policy statement to all attorneys and staff regarding Ethical Screens and Conflict Walls. *Pl.'s Ex. 1.*

17. On May 2, 2023, two memos were issued by Guthrie to all employees of the OAG regarding the establishment of an Ethical Screen for AG23-246: one memo for the Civil Division and another memo for the General Crimes Division. *Pl.'s Ex. 2.*

18. On May 4, 2023, a second Grand Jury Subpoena Duces Tecum for AG23-246 was issued by Gloria Rudolph to Tom Nadeau seeking, among other things, sanitary permits, inspection reports, health certificates, and supporting documentation for all DOE facilities from Jan. 1, 2018, to the present (at that time, May 4, 2023). *Def.'s Ex. O.*

19. On May 5, 2023, DPHSS requested legal assistance with the May 4, 2023 grand jury subpoena duces tecum issued to Tom Nadeau, in which Former AAG Miller assisted in facilitating documentation responsive to the subpoena duces tecum. *Def.'s Exs. D, F, and S.* On May 11, 2023, Former AGG Miller accompanied Defendant Nadeau to the Grand Jury. Min. Entry at 2:39:21 PM (Hearing, Mar. 13, 2024).

20. In July 2023, this case was publicly filed and on July 3, 2023, Defendants Arthur U. San Agustin and Masatomo Nadeau were indicted and charged by a Grand Jury. Indictment (July 3, 2023).

21. On July 27, 2023, the OAG issued a Legal Opinion in response to San Agustin's April 6 inquiry. *Def.'s Ex. M.*

22. On August 21, 2023, the Government filed a Superseding Indictment charging San Agustin. On September 1, 2023, Defendant San Agustin filed a Motion to Disqualify the Office of the AG (later joined by Nadeau) claiming that the OAG was complicit in how the DPHSS manages sanitary permits and enforces the School Sanitation Regulations because of legal advice provided by the OAG civil division (Former AAG Sandra Miller). Mot. to Disqualify Off. Of Att'y Gen. (Sept. 1, 2023) and Super. Indictment (Aug. 21, 2023).

## DISCUSSION

In Guam, "the current standard for attorney disqualification is whether an attorney's continued representation of a party or participation in an action violates or significantly risks violating the Guam Rules of Professional Conduct." *Barrett-Anderson v. Camacho*, 2018 Guam 20 ¶ 20. "[D]isqualification is a drastic course of action that should not be taken simply out of hypersensitivity to ethical nuances or the appearance of impropriety." *Id.* ¶ 17.

Defendants Motions to Disqualify the AG cite several rules, including Guam Rule of Professional Conduct ("GRPC"), particularly GRPC 1.8 and GRPC 1.13(b) and (d), that may be implicated here. However, Defendants' Motions primarily turn on GRPC 1.7, which provides, in relevant part:

(a) ... a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:

(1) the representation of one client will be directly adverse to another client; or

(2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person, or by a personal interest of the lawyer.

## A. Do the Guam Rules of Professional Conduct Apply to the OAG?

The Court answers this question in the affirmative. Guam Rules of Professional Conduct apply to the attorneys of the OAG, including the Attorney General himself. *See Barrett-Anderson*, 2018 Guam 20 ¶¶ 14-28 (analyzing Assistant Attorney General's alleged conflict of interest); *People v. Tennessen*, 2009 Guam 3 ¶¶ 33-50 (analyzing the Attorney General's own alleged conflict of interest). Other jurisdictions agree. *See, e.g., Att'y General v. Mich. Public Service Com'n*, 625 N.W.2d 16, 27 (Mich. Ct. App. 2000) ("It is well settled that in the control of litigation, the Attorney General has the duty to conform his conduct to that prescribed by the rules of professional ethics." (quoting *Manchin v. Browning*, 296 S.E.2d 909 (W. Va. 1982)), *Chun v. Ba. of Trustees of Employees' Retirement Sys. Of State of Hawaii*, 952 P.2d 1215, 1237-38 (Haw. 1998), *see also* 7A C.J.S. Attorney General § 46, "Conflict Interests" (2024), 7 Am. Jur. 2d Attorney General § 17 (2024).

In general, the "rules of professional conduct are not to be mechanically applied" to the attorneys of the OAG, or to any other Guam attorneys. *Barrett-Anderson*, 2018 Guam 20 ¶ 24; *accord Chun*, 952 P.2d at 1236, *Michigan Public Service Com 'n*, 625 N.W.2d at 33. Recognizing this, other jurisdictions have determined that the "unique nature" of their OAG (or its local equivalent) "allow[s] dual representation in certain circumstances not otherwise permitted in the arena of private practice." *See id.; State ex rel. Com 'r of Transp. v. Medicine Bird Black Bear White Eagle*, 63 S.W.3d 734, 773-74 (Tenn. Ct. App. 2001). Guam, however, has explicitly "reject[ed] the Attorney General's request for flexibility under the [GRPC] based

on [their] unique position as the Chief Legal Officer of the Government of Guam." *Barrett-Anderson*, 2018 Guam 20 ¶ 24, *see also Santos v. Camacho*, 2006 WL 581251 * 7 (D. Guam Mar. 10, 2006). Guam Rules of Professional Conduct therefore apply to the attorneys of the OAG, including the Attorney General himself. The GRPC applies to the OAG generally and therefore GRPC 1.7(a) applies specifically.

### B. Is the OAG Disqualified Because Their Continued Participation in this Case Would Violate the Guam Rules of Professional Conduct?

The Court answers this question in the affirmative. Under *Barrett-Anderson*, the OAG is disqualified if their continued participation if this case would violate the Guam Rules of Professional Conduct ("GRPC"). The OAG's continued participation in this case would violate GRPC 1.7(a), because the OAG has a concurrent conflict of interest. GRPC 1.7(a) "prohibit[s] an attorney from representing a client whose interests are adverse to the interests of another former or current client." *Guerrero v. Moylan*, 2002 Guam 18 ¶ 49. The following analysis demonstrates that the OAG violated GRPC 1.7(a) by focusing on three issues: (1) whether this case involves two distinct "clients" of the OAG, (2) whether the interest of those two clients conflicts, and (3) whether the conflict was properly addressed with a conflict wall.

### i. This Case Implicates Two Clients of the OAG

It is undisputed that one "client" of the OAG is the public interest. *See, e.g., In re Kline*, 311 P.2d 321, 390 (Kan. 2013) ("as Attorney General... his 'client' was the public."); *Levitt v. Attorney General*, 151 A. 171, 174 (Conn. 1930). The People maintain that the prosecutorial division of the OAG is a "law firm" that serves "the People of Guam" or the public interest in criminal prosecutions. *See* [People of Guam's Prop.] Findings of Fact & Conclusions of Law re: Mot. to Disqualify the AG at 2 (Mar. 29, 2024) (referring to the prosecution as an

"important public law firm"). Defendants do not disagree. Since Guam law empowers the Attorney General to serve as the "public prosecutor" for Guam, 5 GCA § 30104, and to "conduct... the prosecution of all offenses against the laws of Guam," 5 GCA § 30109(a), the Court agrees that the public is one "client" of the OAG.

While the parties agree that the public interest is one "client" implicated by this case, the parties disagree on whether the OAG has a second "client," in the form of the Defendants. The People argue that the OAG "represents both the Government of Guam and the Public Interest," but that these two entities are essentially one client, because "all government officials are agents of our client, the Government of Guam, which belongs to the 'People of Guam'." People's Opp'n to Mot. to Disqualify Off. of Att'y Gen. at 2 (Sept. 15, 2023). This circular contention is opposed by Defendants, who argue that historically the OAG treats agencies like DPHSS and their constituents as clients distinct from the public interest. [Prop.] Findings of Facts & Conclusions of Law re: Mot. to Disqualify Off. of Att'y Gen. at 12 (Apr. 1, 2024). Further, Defendant Nadeau argues that he "reasonably believed that AAG Miller was advising him personally when he expressed concern about testifying before the grand jury." Def. Nadeau's Prop. Findings of Fact & Conclusions of Law at 5 (Apr. 1, 2024).

This court does not come to any conclusions about whether the OAG represents private individuals[8], however, the Guam Supreme Court recently made it very clear that the OAG represents executive agencies. *See* Decl. J., CRQ24-001 at 7 (May 31, 2024) ("The AG has an attorney-client relationship with executive branch agencies, and the rules of professional

---

[8] Although, generally, the AG strictly represents the public. *See, e.g., Cebertowicz v. Madigan*, 48 N.E.3d 702, 706-07 (Ill. Ct. App. 2016); *Cliff v. Vacco*, 267 A.D.2d 731 (N.Y. App. Div. 1999).

conduct apply.[9]"). In their Declaratory Judgement regarding AG Moylan's recent withdrawal from executive branch agencies, the Guam Supreme Court continues:

> ...as an inanimate entity, an agency must act through its agents since it cannot speak directly to its lawyers. *Cf. Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348 (1985). Thus, although the client is the agency, when one of the constituents of an agency communicates with the agency's lawyer in that person's official capacity, the communication is confidential. *See Jess by Reinecke v. Danforth*, 485 N.W.2d 63, 67 (Wis. 1992). If the agency's attorney believes that the official's interests are adverse to the agency's, he has a duty to explain to the official that he represents the agency's interest, not the individual's. *See* Guam R. Prof'l Conduct 1.13(d).

*Id.* at ¶ 7.

The Guam Supreme Court's holding aligns with Former Assistant Attorney Generals Jessica Toft's and Sandra Miller's testimony regarding the history of the OAG and its procedure.[10]

Regarding the case before us specifically, Former AAG Toft testified that she assisted DPHSS in drafting the rules and regulations concerning School Sanitary Permits in 2019. Min. Entry at 2:43:21 AM (Hearing, Mar. 12, 2024). Former AAG Miller also testified that she worked directly with Nadeau regarding his Grand Jury subpoena and viewed her role as facilitating the disclosure of documents from DPHSS to the prosecution division. Min. Entry at 2:39:21 PM (Hearing, Mar. 13, 2024). It follows that the DPHSS is therefore the OAG's "client." Thus, the case implicates two clients of the

---

[9] Citing *Morgan v. N.Y. State Dep't of Env't Conservation*, 779 N.Y.S.2d 643, 645 (App. Div. 2004); *Attorney General v. Mich. Pub. Serv. Comm'n*, 625 N.W.2d 16, 28 (Mich. Ct. App. 2000).

[10] Former Assistant Attorney Generals testified that under prior Attorney Generals Lirnitaco, Rapada, Barret-Anderson, and Camacho, agency requests for legal advice came by formal letter and, when accepted, created an attorney client relationship between the OAG, the applicable agency, and its director and designated employees. Min. Entry at 2:23:00 PM (Hearing, Mar. 12, 2024); Min. Entry at 2:00:00 PM (Hearing, Mar. 13, 2024); and *Def.'s Ex. T1.*

OAG: (1) the public interest and (2) the DPHSS, acting through its agents Director San Augustin and Chief Environmental Public Health Officer Nadeau, the Defendants.

### ii. The OAG Has a Concurrent Conflict of Interest

Under GRCP 1.7(a)(2), a concurrent conflict of interest exists where "there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer." That is the situation before us.

The targets of the prosecution in this case are also executive branch employees represented by the OAG; this creates a concurrent conflict of interest. Exasperating this conflict is the fact that official DPHSS activity, advised on by the OAG, is now the subject of the OAG's prosecution. For the reasons above, the DPHSS is a client of the OAG. Thus, DPHSS has the same right to "undivided loyalty" from the OAG as any other client. *See* Decl. J., CRQ24-001 at 7 (May 31, 2024) ("As his clients, the AG owes a duty of confidentiality and loyalty to the agencies."). In the context of concurrent conflicts of interest, loyalty is the "primary value at stake." *Metro-Goldwyn-Alayer, Inc. v. Tracing* Corp., 36 Cal. App. 4th 1832, 1839 (Ct. App. 1995). Further, the Guam Supreme Court recently clarified that "an attorney in the Office of the Attorney General, including the AG, has an actual conflict of interest when they have advised a government officer in their official capacity on matters related to an offense the officer is charged with." *See* Decl. J., CRQ24-001 at 8 (May 31, 2024).

Attorneys in the Office of the Attorney General, including the AG himself, advised DPHSS officials in exactly the matter described above. AAG Toft assisted DPHSS in drafting the rules and regulations concerning the very School Sanitary Permits at issue in this case, and AGG Miller later assisted DPHSS with a matter concerning the applicability and interpretation

of a grace period for those very School Sanitation Regulations in 2020. Min. Entry at 2:43:21 AM (Hearing, Mar. 12, 2024). Finally, AG Moylan himself instructed AAG Miller, who was representing DPHSS, that she was to have Defendant Nadeau personally appear and testify before the Grand Jury regarding the charges in this case. Min. Entry at 2:39:21 PM (Hearing, Mar. 13, 2024) and *Def.'s Exs. F and S.* Thus, a concurrent conflict of interest exists because the OAG "advised a government officer in their official capacity on matters related to an offense the officer [was] charged with." *See* Decl. J., CRQ24-001 at 8 (May 31, 2024).

DPHSS has a valid interest in receiving loyal, confidential legal representation. This is true of the organization as a whole, not merely its constituent employees. Based on the above analysis, the OAG clearly risks subordinating the DPHSS's legal interests to the OAG's prosecutorial interests. The Court therefore concludes that the OAG has a concurrent conflict of interest under GRPC 1.7(a)(2).

### iii. There Was a Conflict Wall, But It Was Late and Ineffective

Generally, when a lawyer is disqualified for a conflict under Rule 1.9 or 1.7, that conflict is imputed to that lawyer's firm unless "the disqualified lawyer is timely screened from any participation in the matter…" GRPC 1.11(b).

As the OAG's director, AG Moylan "must make reasonable efforts to ensure that the Office of the Attorney General has measures in effect that give reasonable assurance that all lawyers in the Office of the Attorney General conform to the Rules of Professional Conduct. The AG must also make reasonable efforts to ensure that the lawyers under his direct supervisory authority conform to the Rules of Professional Conduct." *See* Decl. J., CRQ24-001 at 9 (May 31, 2024) (citing Guam R. Prof'l Conduct 5.1(a) and (b)). The Guam Supreme Court recently held that the AG has discretion regarding these "reasonable efforts," which can

include appointing a Special Assistant Attorney General, recusing from prosecution, or erecting "conflict walls." *Id.* Nevertheless, "faced with such a conflict, the AG cannot simply choose to do nothing." *Id.* (citing *Lacey v. Maricopa County*, 693 F.3d 896, 933 (9th Cir. 2012)).

In the case before us, the AG chose to do something. However, the AG's reasoning behind this choice is at times paradoxical and confusing. On September 15, 2023, the OAG initially took the position that there was no conflict of interest. People's Opp'n to Mot. to Disqualify Off. of Att'y Gen. at 3-5 (Sept. 15, 2023). However, on the third day of hearings, the OAG contradicted itself and surprised this Court with evidence of a conflict wall, claiming that the DPHSS investigation was screened all along. Min. Entry at 10:27:39 AM (Hearing, Mar. 15, 2024). To explain the split in the OAG's narrative, the OAG claims that they established the conflict wall "out of an abundance of caution" and not because of a genuine conflict. Min. Entry at 10:53:00 AM (Hearing, Mar. 15, 2024). To put it mildly, the Court finds this story suspect. Based on the historical record[11], the OAG does not typically screen its attorneys "out of an abundance of caution" while simultaneously denying an actual conflict occurred. Nevertheless, based on the above analysis, an actual conflict *did* occur. Thus, the Court must analyze the OAG's paradoxical "conflict-without-a-conflict-wall" at face value and determine whether the wall sufficiently screened the rest of the OAG from its concurrent conflict of interest.

Where a conflict is demonstrated, the burden shifts to the People to demonstrate by clear and convincing evidence "that the challenged attorney has been sufficiently screened

---

[11] Former AAG Toft provided Exhibit TI to demonstrate that a list of conflicts, including those of prior Attorneys General, was maintained, logged and recorded at the OAG under the past three Attorneys Generals' administrations. Min. Entry at 2:23:00 PM (Hearing, Mar. 12, 2024) and *Def.'s Ex. T1.*

from the remainder of the staff and its work on the pending case." *See e.g., State v. Claybrook,* No. 3, 1992 WL 17546 at 7 (Tenn. Crim. App. Oct. 28, 1999). Guam case law suggests that the OAG can screen attorneys with conflict walls to avoid disqualification of the entire office. *See Tennessen*[12] 2009 Guam 3 ¶ 36 ("Where conflict walls are effectively implemented, disqualification of the entire office may be unnecessary."), *People v. Santos,* 2018 2 Guam 12 ¶ 14. In Guam, "[t]he burden falls upon the government to show that the conflict wall provided an effective screen." *Tennessen,* 2009 Guam 3 ¶ 46 (citing *State v. Gonzales,* 119 P.3d 151, 163 (N.M. 2005)).

During his surprise testimony, CDAG Guthrie testified that he and AG Moylan agreed, during the early stages of the DPHSS investigation, to establish a conflict wall screening the Prosecution Division from the Civil Division of the OAG. Min. Entry at 10:24:00 AM (Hearing, Mar. 15, 2024). According to CDAG Guthrie, the plan was for Guthrie to oversee the Civil Division while AG Moylan oversaw the Prosecution Division, including the prosecution of DPHSS. *Id.* and *Def.'s Ex. AA.* Yet, Moylan and Guthrie did not erect their conflict wall regarding this case until May 2, 2023. Min. Entry at 10:25:30 AM (Hearing, Mar. 15, 2024) and *Ex. 1.* This was almost three months after the OAG first opened their investigation into DPHSS and almost a month after the OAG issued their first subpoena. *Def.'s Exs. D, R1, and J.* Thus, the conflict wall was not "timely" under GRPC 1.11(b). Further, it violates the OAG's own policy, which requires that an effective conflict wall must be "erected before or at the time when the conflict arises." *Def.'s Ex Z.*

---

[12] The Court recognizes that *Tennessen* was overruled in part by *Barrett-Anderson*, 2018 Guam 20 ¶ 19, but only "to the extent that [*Tennessen*] is inconsistent." The inconsistency between the cases involves the standard evaluating disqualification, not the use of conflict walls. *See Id.* ¶¶ 15-20. Since *Barrett-Anderson* did not address conflict walls, it did not overrule this portion of *Tennessen*.

Compounding these problems, AG Moylan, who was on the Prosecutorial side of the ethical wall, instructed AAG Miller, who was on the Civil side, to have Defendant Nadeau testify before the Grand Jury and provide documents that were later used in Nadeau's own prosecution. Min. Entry at 2:39:21 PM (Hearing, Mar. 13, 2024). This blatantly violates the civil / prosecutorial boundary that the CDAG himself testified he established with Moylan. Furthermore, AAG Miller testified that she received a memo regarding the conflict wall for AG23-246 (the prosecution of DPHSS), but she did not know who the screened lawyers were on the other side of the wall, and she was unsure whether the wall was effective. *Id.* at 2:29:00 PM. This might explain why AAG Miller failed to advise Nadeau that she was not representing him personally and that he had a right to retain his own lawyer.[13] Finally, AAG Miller regularly communicated across the wall with DAG Rudolph, as well as Investigator Apuron, who both testified that they were two of the primary OAG employees—after AG Moylan—driving this case's prosecution. Min. Entry at 11:40:00 AM and 2:40:00 PM (Hearing, Mar. 18, 2024). All of this violated the OAG's own policy drafted by CDAG Guthrie, which mandates notice, with acknowledgment in writing, to all screened persons on both sides of a conflict wall.[14]

An old adage[15] inquires, *if a tree falls in a forest, and no one is around to hear it, does it make a sound?* This Court must similarly inquire, *if a conflict wall is set up, and no one in the office is aware of whom is conflicted, does it prevent a conflict of interest?* The Court declines to answer the former, as the old adage is unknowable, however, we can answer the

---

[13] *See* Decl. J., CRQ24-001 at 9 (May 31, 2024) ("If the agency's attorney believes that the official's interests are adverse to the agency's, he has a duty to explain to the official that he represents the agency's interest, not the individual's." citing Guam R. Prof'l Conduct 1.13(d)).

[14] *See Def.'s Ex. Z.*

[15] *See* George Berkley, A Treatise Concerning the Principles of Human Knowledge. 45 (2d ed. 1710); or Charles Riborg Mann & George Ransom Twiss, Physics (1910).

latter assuredly in the negative. The OAG failed to provide sufficient evidence that their attorneys knew who was on which side of the conflict wall, nor did they provide evidence of warnings or consequences being issued after the wall was breached. It is therefore clear that the conflict wall was totally ineffective. Thus, the concurrent conflict of interest is imputed across the OAG, and the whole office must be disqualified from this prosecution.

## CONCLUSION AND ORDER

Based on the above analysis, the Court concludes that the Office of the Attorney General's continued representation in this case will violate GRPC 1.7. The conflict of interest was not mitigated by the instantiation of an effective conflict wall. Therefore, the Court **GRANTS** the Defendants' Motions to Disqualify the Office of the Attorney General.

///

///

///

///

///

///

Based on the Court's analysis and conclusion that the Office of the Attorney General's continued representation in this case will violate GRPC 1.7 and that the conflict of interest had not been mitigated by the imposition of an effective conflict wall; the Court finds, consequently, that the Government of Guam must secure the services of a special prosecutor to handle this matter and independent from the supervision and/or oversight of the Office of the Attorney General.

**WHEREFORE, IT IS HEREBY ORDERED** that the appointment of a special prosecutor be made within thirty (30) days of the filing of this Order or the matter will be dismissed in its entirety.

SO ORDERED, this ___1___ day of ___July___ 2024.

_____
**HONORABLE JOHN C. TERLAJE**
Judge, Superior Court of Guam